Howry, J.,
delivered tbe opinion of tbe court:
This action was instituted by Kerwin Wilson, May 8, 1880, who died in tbe State of South Dakota (then tbe Territory of Dakota) on or about April 1,1881. Letters of administration on tbe estate of tbe decedent were granted by tbe supreme court of tbe District of Columbia to George A. King, who filed copy of tbe proceeding's in this court to prosecute tbe suit. Thereupon tbe Government made a motion to strike from tbe files tbe record of tbe said letters and tbe appearance of the administrator so ajipointed on tbe ground that authority to grant letters of administration did not exist in tbe courts of this district, and that consequently tbe appointment of an administrator was void. This in otion was sustained on the presumptioji that Kirwin Wilson bad a domicile in South Dakota, and in such case some court there bad exclusive jurisdiction to grant principal administration on bis estate. (27 C. Ols. It., 529.) The suit is now prosecuted in the name of an administratrix appointed at the proper place, and is before us on tbe merits, a new trial having been granted at tbe instance of tbe claimant.
Tbe petition alleges, in substance, that said Kerwin Wilson was a settler on the Fort Kandall Keservation in Dakota, set aside in part for military purposes and transferred in part to tbe Department of tbe Interior by authority of tbe act of May 18,1874 (18 Stat. L., 47); that be made improvements thereon which were appraised by a military board of survey convened at said fort under instructions from tbe War Department, dated March 3,1871; that be vacated said lands and improvements when the military authorities assumed control of tbe same, wherefore tbe appraised sum was claimed under section 3 of said act. Tbe evidence shows that Wilson left tbe reservation in 1873, and that tbe appraisement mentioned in tbe petition took place some time before be left. Tbe appraisement must therefore have been made prior to 1873, and we do not understand this fact to be disputed by claimant, sustained as it is with report to date by tbe report of tbe Secretary of War.
Under date of March 8,1871, and by Special Orders, No. 4C, tbe military department of Dakota, in accordance with instructions from tbe War Department, convened a board of officers to investigate and report upon tbe claims of settlers or squatters on that portion of tbe military reservation at Fort Kan-dall which included Wilson’s claim for improvements on tbe *339 160 acres of land upon which he settled in 1867. The board duly appraised the value of the property of various settlers, of whom Wilson was one, and for reasons not necessary to detail, payment was never made to him, in consequence of which he instituted suit. In the meantime, after the appraisement, but before the institution of the suit in 1880, Congress passed an act for the relief of the settlers on the Fort Randall Military Reservation, which was approved May 18, 1874, and which reads as follows:
“Be it enacted by the Senate and Jlotise of Representatives of the United States of America in Congress assembled, That the Secretary of War be, and he is hereby, authorized to transfer to the custody of the Department of the Interior such portions of the military reservation of Fort Randall, in Dakota, as were actually occupied by settlers prior to the promulgation of the order of the President of June fourteenth, eighteen hundred and sixty, setting apart the reservation for military purposes, and, further, such portions of the said reservation as were released from military occupation and control between the years eighteen hundred and sixty-seven and eighteen hundred and seventy, and were during that time settled upon in good faith and in the belief that the lands were open to settlement.
“ Sec. 2. That the Secretary of the Interior be authorized to confirm, in accordance with existing laws, the titles of such settlers upon the military reservation of Fort Randall as may be reported by the Secretary of War for that purpose, and to cause patents to be issued for such lands as the aforesaid settlers may be entitled to under existing laws and the provisions of this act.
“Sec. 3. That the Secretary of the Treasury be, and he is hereby, authorized to pay to each of the aforesaid settlers the respective amounts that were appraised as the value of their respective improvements, by a military board of survey convened for that purpose, at Fort Randall, under instructions from the War Department, dated March third, eighteen hundred and seventy-one: Provided, That in case any improvements, or portion thereof, shall have been restored or delivered to any settler, after the appraisement of the same by the said military board of survey, such settler shall not be entitled to payment under this .aet for the improvements, or portion thereof, so restored or delivered to him.”
The plea of the statute of limitations of six years having been interposed by the Government, we held upon the first trial that an army regulation is the lawful regulation of an executive department, which, like any other Department regu *340 lation, confers jurisdiction upon this court (citing Maddux v. United States, 20 C. Oís. R., 193); that the right of the settler grew out of the action of the military board in taking and appraising his property, and that, as the foundation of the right was the regulation, the claim accrued when under the regulation the right to compensation for the improvements became payable. And as the action was not commenced within six years, the claim was barred under the provisions of section 1059 of the Revised Statutes, without reference to the act of May 18, 1874 (supra), following the rules which declare that nothing prevents the running of the statute of limitations other than the disabilities specified in the statute itself (Wilder’s Case, 13 Wall., 254); and nothing makes it cease to run when once begun other than the filing of a petition in this court, except in cases transmitted under the provisions of section 1003 of the Revised States. (Carlisle v. United States, 29 C. Cls. R., 414.)
Pending the motion for a new trial the Supreme Court (affirming the decision of this court in Wardwell, admx., v. United States, 32 C. Cls. R., 30, in an action for funds covered into the Treasury bearing the impress of a trust under section 306 of the Revised Statutes), substantially held that where there is a preexisting obligation on the part of the United States originally cognizable in this court, which is subsequently adopted by legislation authorizing and directing the Secretary of the Treasury to pay to the claimant the amount of the obligation, the statute of limitations does not begin to run until application is made for payment under such subsequent legislation; and whether there was or not any prior liability on the part of the Government, the declaration of Congress constituted a distinct and separate promise creating a liability, and a new liability in case of one preexisting, on which the claim accrued when the new liability matured. (United States v. Wardwell, admx., 172 U. S. R., 48.)
The action then, not being barred by the act of May 18,1874, certain questions arise upon the merits of the claim. It is contended by the defendants that the claimant, as the representative of the original settler, is not entitled to tbe benefit of the act of May 18, 1874, because, first, of the doubt as to whether Kerwin Wilson was a settler upon the land; and, secondly, because of the action of the Auditor of the War Department disallowing the claim for improvements upon the *341 probable ground that these improvements bad been restored or delivered to bim.
It appears that when tbe titles of tbe settlers upon tbe military reservation of Fort Randall came to be confirmed, no patent issued to Wilson, nor was be found upon tbe settlement. One Joseph Ellis was living on tbe land, and, under instructions from tbe Commissioner of tbe General Land Office, a preemption declaration was filed in tbe name of said Ellis, but no filing or entry was made by Wilson.
But tbe original claimant settled upon tbe reservation between tbe years 1867 and 1870, and in good faitb and in tbe belief that tbe lands were open to settlement made the improvements which the military board appraised. He was recognized by tbe War Department upon tbe report of this board as one of tbe settlers. Tbe Secretary of War included tbe claim with others in a report to the House of Representatives, and upon its transmission for tbe purposes shown by tbe report Congress passed the act of 1874. The claim of Joseph Ellis was also included in this list as covering other and distinctly separate improvements. There is nothing substantial or certain to show tbe grounds for tbe final rejection of tbe Wilson claim by tbe War Department. The records have either been lost or destroyed, and they can not be found. Under tbe circumstances disclosed in connection with tbe settlement of tbe land at tbe outset and its abandonment after tbe appraisement, tbe presumption can not be indulged that the improvements were restored to the owner. Tbe proviso of the third section of tbe act of May 18,1874, embodies matter of defense under which, to defeat recovery, tbe defendants may show tbe restoration or delivery of tbe appraised improvements. When tbe exception is contained in a proviso, and not in tbe enacting clause, tbe party pleading tbe statute need not negative tbe exception. It is for tbe other party to set it up in avoidance of tbe general provisions of tbe statute. (Dwarris on Stat., 515; Muller v. United States, 4 O. Ols. R., 61.) Tbe Secretary of tbe Treasury being authorized to pay tbe amounts appraised, subject only to prior restoration and delivery of tbe improvements, and defendants having failed in tbe issue here to show this, the claimant is entitled to recover.
Judgment will therefore be entered for $485.50, that sum covering tbe appraisement in Wilson’s favor.